CALEB STONE, JOHN B. GLOVER, and STEPHEN GRIGGS, plaintiffs in error, *v.* WILLIAM MANNING, defendant in error.

### *Error to Madison.*

A bill in chancery alleged, that a copartnership originally existed between the complainant and S. and G., the complainant being merely a nominal partner, and receiving an annual salary of fifteen hundred dollars for his services; and that this co-partnership was dissolved, and the effects of the firm transferred to a new firm composed of S. and G. ; and that the complainant took from S and G. a bond of indemnity to save him harmless against debts of the old firm ; and that S. and G. had fraudulently assigned their goods to one D.   The bill further alleged, that the complainant had been compelled to expend large sums of money in payment of debts of the firm.   The bill prayed that the conveyances to D. might be set aside as fraudulent and void; and that the effects of the new firm might be applied to liquidate his claims against S. and G. for money

advanced by him in payment of the debts of the old firm: *Held,* that he had no preference in payment out of the effects of the new firm; and that his remedy was at law, and not in equity. *Held,* also, that if the complainant had paid debts of the old firm, he was no more than a simple contract creditor of S. and G., having paid money on their account, and to their use, for which his remedy at law was ample and perfect.

Before a creditor can ask the aid of a court of chancery, to set aside a conveyance made by his debtor, to secure other creditors, on the ground of fraud, he must first have established his claim against the debtor, by judgment in a court of law, and made efforts to obtain satisfaction of the judgment, by execution.

[THE record in this cause is very voluminous, and a full abstract of it would occupy more space than can well be given to it; and at the same time it would not throw any more light upon the points decided by the Court. For these reasons it has been omitted. The Reporter has been furnished with the able brief of Messrs. Cowles and Krum, and has inserted so much of it as relates to the points decided by the Court; and omitted the remainder.]

This cause was heard in the Court below, at the February term, 1840, before the Hon. Sidney Breese. The bill was taken *pro confesso* in that Court, and a decree entered in favor of the complainant, in conformity with the prayer of his bill.

The cause was brought to this Court by writ of error.

A COWLES and J. M. KRUM, for the plaintiffs in error.

The case made by the bill is not such as to authorize a court of equity to assume jurisdiction, for the purpose of compelling a discovery, or granting relief.

I. 1. Because the complainant was not an actual partner of Stone, Manning, & Co.

2. Complainant has no lien on the effects of Stone, Manning, & Co., nor on the effects of the firm of Stone & Co.

And under the first head I propose to consider what constitutes a copartnership.

To render a partnership complete, a communion of profits and loss is essential. 3 Kent Com. 2.

The copartnership may be public or private, by agreement or by tacit consent.

An implied or presumptive assent, is equal to an express agreement.

A joint possession has not *per se* the effect to make the possessors partners.

A partnership may legally subsist as between individuals and the world, and yet not as between the individuals themselves. Gow 11.

Partnerships are of three kinds, ostensible, dormant, and nominal. Gow 11.

II. Manning was a *nominal* partner.

1. Being a nominal partner, he cannot control the assets of the concern. Gow 126, 127; 4 Vesey 756.

2. The assets, as shown by the bill, were transferred to Stone & Glover, with complainant's assent.

3. Complainant fails to identify the assets of S. M. & Co.

4. Complainant disclaims ever having had any control; how control now?

5. Complainant admits that the whole capital stock was furnished by Stone & Glover.

6. There never was any joint property. Gow 254, 255; 5 Vesey 189.

7. Being a simple creditor merely, complainant is not entitled to the relief sought. 2 Johns. Ch. R. 296; 4 Johns. Ch. R. 305; 1 Paige 305, 637, 168; 3 Paige 311; Eden on Inj. 220.

III. Under the second head, how can the complainant acquire any control over the assets of S. M. & Co., or of Stone & Co.? In no way.

1. Because the property of Stone, Manning, & Co. was transferred *bonâ fide* to Stone & Co., and all the interest and control of complainant, if he ever had any, passed with the property to Stone & Co., and they thus became the sole owners thereof. Gow 261, 268; 6 Vesey 127; 10 Vesey 347.

2. It appears from the showing of complainant, that the effects of Stone, Manning, & Co. have become so mingled with the effects of Stone & Co., that they cannot be separated; he is, therefore, precluded from having specific relief. 3 Cond. Eng. Ch., title *Partnership*, 652.

3. It is good ground of demurrer that complainant has a remedy at law. Cooper 189.

IV. It appears, upon the face of the bill, that the complainant's demand or cause of action is properly cognizable in a court of law.

1. It is a fundamental rule, in equity pleading, that the bill must state a case within the appropriate jurisdiction of a court of equity.

2. A court of equity cannot act except upon its own intrinsic authority, in matters of jurisdiction; and

3. Though consent may cure many errors and irregularities, still it cannot confer jurisdiction. Story's Equity Pl. 8; Cooper's Eq. 10, 11.

4. If the remedy at law exists, a court of equity will not stop to consider whether it will subject the party to inconvenience or hazard.

5. It is the existence of the remedy at law, not the extent of pecuniary satisfaction by execution, which must settle the question of jurisdiction.

6. Is the right to recover in this case, at law, coextensive to the relief sought in equity; i. e. could the complainant recover a judgment as large at law against Stone & Glover, as he could by bill in equity?

7. The bond which is recited and made part of the bill discovers the remedy at law, and the extent of that remedy.

8. It is commensurate to the complainant's demand.

9. The remedy at law is not local, it can be enforced wherever the defendants may be found.

10. A court of equity will not stop to enquire as to the mode, time, and place of enforcing the legal remedy disclosed by the bill.

11. If the legal remedy is apparent, the party having the remedy, is left to pursue it in his own way.

12. The complainant's remedy at law, i. e. his right to recover against Stone & Glover, is not doubtful; the only doubt which the bill discloses is as to the satisfaction of any judgment the complainant might recover of defendants.

13. Courts of equity will not assume jurisdiction where courts of law are sufficient for the purposes of justice. Story's Equity Pl. 373; Mitford's Pl. 123; Cooper's Eq. 124.

14. Was any discovery necessary to establish the complainant's right? We contend not. Story's Eq. Pl. 377; Cooper's Eq. 123; 6 Vesey 136.

The property of a debtor fraudulently conveyed away, cannot be reached by a bill in equity against the holder, until a judgment has been obtained against the debtor. A judgment creditor only can seek such relief. 2 Johns. Ch. R. 296; 4 Johns. Ch. R. 305; 1 Paige 168, 305, 637; 3 Paige 311; 2 Edwards 197.

Justin Butterfield, was also for the plaintiffs in error.

S. T. Logan and Wm. Martin, for the defendant in error.

Smith, Justice, delivered the opinion of the Court:

It is unnecessary in this case to do more than briefly state some of the facts disclosed in the complainant's bill, to show that he is not entitled to the relief sought.

It appears that a copartnership originally existed between the complainant and Stone & Glover; the complainant being merely a nominal partner, and receiving an annual salary of $ 1500. That this copartnership was dissolved, and the effects of the firm carried and transferred to a new firm, under the name of Stone & Co., composed of Stone & Glover, and that the complainant took from Stone & Glover a bond of indemnity, to save him harmless against the debts due by the old firm. It also appears that Stone & Glover have assigned a part of their copartnership property to the defendant, Griggs, to pay certain debts. The complainant alleges that this assignment was fraudulent.

The complainant now seeks to have the effects of the new firm applied to the payment of his claim alleged to have originated by his payment of debts of the old firm, which he alleges he has paid, and for his expenses connected with his efforts to make settlement and payment of the debts alleged to have been extinguished by him; such application of the effects of the new firm to be made to the payment of his claim, to the exclusion of other creditors of the

Stone *et al. v.* Manning.

firm of Stone & Co., for whose benefit the assignment made is intended, but which complainant alleges is fraudulent and void as to him.

In the consideration of the case, it will be apparent from the complainant's statement, that he has no preference of payment, in equity, for the moneys he may have voluntarily paid on account of his liabilities under the old firm, out of the property of the new firm. Against the new firm he can have no possible claim, on account of previous transactions of the old firm.   Even the effects of the old firm were merged in the new, and on these he has no lien whatever.   If he has paid debts of the old firm, he is no more than a simple contract creditor of Stone & Glover, having paid moneys on their account, and to their use, and for which his remedy at law is ample and perfect.   But it is still more clear, that he must first establish his claim against Stone & Glover, arising out of the alleged payment, by a judgment at law, and have made efforts to obtain satisfaction by execution, before he could ask the aid of a court of equity, to interfere, and set aside conveyances of the debtors, alleged to be fraudulent, to secure the payment of other creditors' claims.

" There are two classes of cases where a plaintiff is permitted to come into this court (1) for relief, after he has proceeded to judgment and execution at law without obtaining satisfaction of his debt. In the one case, the issuing of the execution gives to the plaintiff a lien upon the property, but he is compelled to come here for the purpose of removing some obstruction fraudulently or inequitably interposed to prevent a sale on execution ; in the other case, the plaintiff comes here to obtain satisfaction of his debt out of property of the defendant, which cannot be reached by execution at law. In the latter case, his right to relief here, depends upon the fact of his having exhausted his legal remedies, without being able to obtain satisfaction of his judgment.   In the first case, the plaintiff may come into this Court for relief immediately after he has obtained a lien on the property, by the issuing of an execution to the sheriff of the county where the same is situated, and the obstruction being removed, he may proceed to enforce the execution, by a sale of the property, although an actual levy is probably necessary to enable him to hold the property against other execution creditors, or *bonâ fide* purchasers." (2)

The same principles are recognised in Johnson's Chancery Reports, (3) and numerous other English and American cases to which they refer.

The present is not a case of copartners asking to have an account taken of the copartnership effects and debts, and a settlement de-

(1) Court of Chancery in New York.
(2) Beck *v.* Burdett, 1 Paige Ch. R. 308.
(3) 2 Johns. Ch. R. 144, 296 ; 4 Johns. Ch. R. 677.

creed between them, but of a person who was only a nominal partner in one firm, asking to have the property of a new and different firm applied to the payment of claims alleged to have grown out of previous liabilities of the old firm, without having first established any legal claim against the new firm, or indeed doing so against the partners, other than himself, of the old firm.

But it is most evident that the complainant is not without entire and adequate relief at law.

He has a perfect remedy on the indemnity bond, and although one of the obligors may reside out of the State, still he may proceed against those who reside here, and against those who may reside elsewhere, in the places of their residence, or he may proceed, under the attachment law, against such as are non-residents.

For these reasons we are of opinion that the judgment of the Circuit Court should be reversed, and the bill dismissed for want of equity on its face.

*Judgment reversed.*

*Note.* In this cause motions were made for a rehearing, and for leave to amend the bill, which were both overruled.